UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY R.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | NO. C18-89-JPD<br><br>ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS |

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court ORDERS that the Commissioner's decision be REVERSED and REMANDED for further proceedings at step five.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-one year old woman with a two-year college education through the Running Start program. Administrative Record

ORDER - 1

("AR") at 474-75.[1]  Her past work experience includes employment as a general clerk/secretary, a construction worker, a home attendant, and a hotel clerk.  AR at 65-68.  Plaintiff was last gainfully employed as a secretary in 2014.  AR at 46.

In March 2014, plaintiff filed a claim for SSI payments, alleging an onset date of February 1, 2013.  AR at 38.  Plaintiff asserts that she is disabled due to fibromyalgia, chronic migraines, rheumatoid arthritis in her back and hands, osteoarthritis in her knees and back, asthma, depression, and anxiety.  AR at 41-42.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 13.  Plaintiff requested a hearing, which took place on December 28, 2016.  AR at 33-85.[2]  On April 13, 2017, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 10-27.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On January 30, 2018, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 6.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

---

[1] Plaintiff never earned her high school diploma because of family demands.  AR at 474-75.
[2] Plaintiff's administrative hearing was initially scheduled for March 14, 2016, but the ALJ postponed the hearing due to the plaintiff's counsel's receipt of voluminous medical records within a week of the hearing.  AR at 79-85.

ORDER - 2

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial

ORDER - 3

gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On April 13, 2017, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since March 3, 2014, the application date.

2. The claimant has the following severe impairments: degenerative disc disease, fibromyalgia, obesity, chronic obstructive pulmonary disease, asthma, learning disorder, dysthymic disorder, panic disorder, somatoform disorder, and migraine headaches.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she can never climb ladders,

ORDER - 5

      ropes or scaffolds, work at unprotected heights or in proximity to hazards. The claimant can occasionally balance, stoop, kneel, crouch and crawl. She can occasionally reach overhead. She can perform work in which concentrated exposure to extreme cold, vibration and/or respiratory irritants is not present. In order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, the claimant can understand, remember and carry out unskilled, routine, and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer. She can cope with occasional work setting change and occasional interaction with supervisors. The claimant can work in proximity to coworkers, but not in a team or cooperative effort. She can perform work in workspace to which the general public is not admitted in the ordinary course of business.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1975 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[4]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 3, 2014, the date the application was filed.

AR at 15-27.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating plaintiff's testimony?

2. Did the ALJ err at step five?

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

Dkt. 19 at 1-2; Dkt. 20 at 1-2.

## VII. DISCUSSION

### A. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

#### 1. *Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[5] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically

---

[5] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. This change was effective March 28, 2016 and is therefore applicable to the April 13, 2017 ALJ decision in this case. The Court, however, continues to cite to relevant case law utilizing the term credibility.

ORDER - 7

identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. *Plaintiff's Testimony Regarding Migraine Headaches*

The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record." AR at 24. The ALJ asserts that plaintiff has "described daily activities, which are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. The claimant reports that she cleans the house, vacuums, washes dishes, does laundry, drives, goes shopping, cooks, cares of her pets, pays bills, and manages her finances. She also reported that she sews and paints as a hobby." AR at 24. The ALJ noted plaintiff's testimony that she spends one hour per day sewing and painting, and she volunteered at an animal adoption shelter until approximately two months prior to the hearing. AR at 24-25.

In addition to plaintiff's daily activities, the ALJ found that the medical evidence of record, including the treatment notes, does not entirely support plaintiff's allegations regarding her physical and mental impairments. AR at 25-26. For example, the ALJ concluded that the treatment notes indicate that plaintiff's pain from her fibromyalgia was well controlled with her medication regimen, and although imaging showed degenerative changes of her lumbar

ORDER - 8

spine, "Dr. Santarelli was skeptical that the degeneration caused her purported ten years of pain." AR at 25. In addition, the ALJ noted that "treatment notes indicate that the claimant's migraine headaches were largely managed with medication and Botox injections. Further, the claimant's headaches were noted to be mild." AR at 25.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding her impairments of fibromyalgia and migraine headaches, and therefore did not include all the limitations in her RFC assessment. Dkt. 19 at 3.[6] Plaintiff testified that the biggest thing that prevents her from working is pain caused by her back and migraines. AR at 48. She stated that she had recently had Botox injections which relieved the pain from the migraines for about two to three weeks, and she gets the injections every 90 days. She also takes other medicine to help relieve them. AR at 49. She testified that she gets migraines 15 or more times per month, and she needs to take naps during the day and/or go lay down in a dark room when she is suffering from a migraine. AR at 60-63.

With regard to plaintiff's headache complaints, the ALJ noted that plaintiff's testimony was not consistent with her treatment records. AR at 21. "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering . . . inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Moreover, an ALJ may discount an individual's testimony when her treatment records reflect improvement or better functioning than she alleged. *Morgan v. Comm'r of Soc. Sec.*

---

[6] Contrary to plaintiff's assertion that "the ALJ's failure to find that [plaintiff's] migraines are a severe impairment is not harmful at step two; it is harmful error because the ALJ then failed to include in her residual functional capacity assessment all of the limitations caused by [plaintiff's] migraines, including her alleged need to take a breach (sic) or decrease her functioning, such as be alone in a darkened room when a headache occurs." Dkt. 19 at 5. At step two, the ALJ found that plaintiff's severe impairments included fibromyalgia as well as migraine headaches. AR at 15. Thus, the Court interprets plaintiff's arguments as a challenge to the ALJ's evaluation of plaintiff's testimony regarding the limitations caused by these impairments.

ORDER - 9

*Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Celaya v. Halter,* 332 F.3d 1177, 1181 (9th Cir. 2003).

Here, the ALJ reasonably concluded that plaintiff's subjective complaints were inconsistent with her treatment records, and this was a clear and convincing reason for the ALJ to give her testimony less weight. Although plaintiff testified at the hearing that she had severe, daily migraine headaches, she had previously described her headache as mild, AR at 306, and described symptoms that her medical providers believed were indicative of musculoskeletal headaches, rather than migraines. AR at 540. Furthermore, in July 2014, she told a consultative examiner that her headaches were only occasional. AR at 481. She testified at the hearing that Botox injections only worked for two to three weeks and that she could only get the injections every ninety days. AR at 49. One month before her hearing, however, she saw her doctor for a follow up six weeks after her Botox injection, and she did not report that the effects lasted only two to three weeks; she reported that Botox was effective and that her symptoms were "fairly controlled." AR at 893, 907. Thus, the ALJ reasonably found that plaintiff's self-reports that her headaches were fairly controlled with her medication regimen was inconsistent with her December 2016 hearing testimony, and therefore her statements about her symptoms were not fully reliable. AR at 25.

Plaintiff does not present any challenge to the ALJ's alternative reason for affording plaintiff's testimony about her headaches less weight, *i.e.*, that plaintiff's daily activities were inconsistent with her reports of chronic daily migraines that lasted for hours. Accordingly, the Court finds that the ALJ properly provided clear and convincing reasons for affording plaintiff's testimony about her limitations stemming from her migraines less weight.

    3.  *Plaintiff's Testimony Regarding her Fibromyalgia*

Plaintiff also argues that the ALJ erroneously rejected plaintiff's testimony regarding the limitations caused by her fibromyalgia. Dkt. 19 at 6. Plaintiff asserts that lack of objective

ORDER - 10

evidence regarding her fibromyalgia pain, alone, was an insufficient reason to reject plaintiff's testimony, as federal courts have recognized that fibromyalgia "often lacks medical or laboratory signs and is generally diagnosed mostly on an individual's described symptoms." *Id.* at 6. *See also* SSR 12-2p.

The ALJ found that plaintiff's allegations about the severity of her fibromyalgia pain were not consistent with her medical records, and summarized the content of her treatment notes in detail. AR at 20. Specifically, the ALJ found that treatment notes confirm plaintiff's history of fibromyalgia, as records indicate that plaintiff had 18 or 18 positive tender points on examination with more than three months of widespread pain, fulfilling the 1990 ARC requirements for fibromyalgia. AR at 20. In addition, Kevin Welk, M.D., expressed that the claimant was doing okay overall, and treatment notes indicate plaintiff reported suffering from pain, numbness, and fatigue. AR at 20. Plaintiff reported to her therapist that her achiness and allover pain was a ten or eleven; however, she expressed that she "could put up with it." AR at 615. She was advised to exercise regularly. Plaintiff previously reported symptom improvement on Cymbalta in August 2014 and March 2015. AR at 537, 540, 748, 758, 767. In January 2016, plaintiff's rheumatologist opined that she was "doing OK" overall. AR at 653. In March 2016, plaintiff reported having done relatively well with controlled pain on Gabapentin, Cymbalta, and Methocarbamol. AR at 20. In July 2016, plaintiff told a physician's assistant that her pain was relatively well controlled on her medications, despite "some 'ups and downs with the weather changes.'" AR at 942. Finally, the ALJ noted normal range of motion in her hands, fingers, wrists, elbows, shoulders, ankles, knees, and hips. AR at 20.

To the degree that plaintiff alleged her fibromyalgia prevented her from performing sedentary work, the ALJ reasonably found her allegations were inconsistent with her medical

ORDER - 11

records, which indicated her symptoms were relatively well controlled on her medication regimen. This was a clear and convincing reason for the ALJ to give plaintiff's testimony less weight. This is not a case, for example, where the ALJ rejected plaintiff's diagnosis or allegations of pain due to the lack of objective evidence for a disease that eludes such measurement. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Instead, the ALJ considered the evidence in the treatment record regarding plaintiff's limitations stemming from her fibromyalgia, as well as the evidence in the record suggesting that her pain was fairly well controlled on her medication regimen. AR at 25. *See Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Finally, as noted above, the ALJ found that plaintiff's daily activities were "not limited to the extent one would expect, given her complaints of disabling symptoms and limitations." AR at 24. For example, the ALJ noted that plaintiff reported that she cleans the house, vacuums, washes dishes, does laundry, drives, goes shopping, cooks, cares for her pets, pays bills, managers her finances, sews and paints. AR at 24. Inconsistency between plaintiff's daily activities and the degree of pain and limitation alleged was a clear and convincing reason for the ALJ to afford plaintiff's testimony less weight.

B. <u>The ALJ Erred at Step Five</u>

At step five, the ALJ found that plaintiff could perform the jobs of touch-up screener (DOT 726.684), for which the vocational expert ("VE") testified there are approximately 11,304 jobs in the national economy and 266 such jobs in Washington state; semiconductor die loader (DOT 726.687-030), for which the VE testified there are 20,257 such jobs in the national economy and only 936 such jobs in Washington state; and semiconductor wafer

ORDER - 12

breaker (DOT 726.687-046), for which the VE testified there were 10,452 such jobs on the national economy and only 496 such jobs in Washington state. AR at 27. The Commissioner concedes that two of these three occupations are not appropriate for an individual with plaintiff's RFC because of the prohibition on exposure to hazards. Dkt. 20 at 9. Specifically, the semiconductor die loader and semiconductor wafer breaker jobs require exposure to moving mechanical parts, toxic caustic chemicals, and other environmental conditions which were prohibited by the ALJ's RFC.

With respect to the third occupation identified by the ALJ, touch-up screener, the Commissioner contends that this job exists in sufficient numbers to carry the ALJ's step five burden of identifying work available in significant numbers in the national economy. AR at 27. Plaintiff contends that the ALJ did not find that there are a significant number of jobs based upon the state numbers, but relied instead on national numbers.[7] Plaintiff asserts that the VE testified there were approximately 11,304 touch-up screener jobs in the national economy, which is not a significant number pursuant to Ninth Circuit precedent. Dkt. 19 at 9 (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (finding that 25,000 jobs

---

[7] The Commissioner argues that the regional number of 266 jobs in Washington State is a significant number, and the Court can affirm on this basis alone. *See Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012) (holding that an ALJ can establish there are significant numbers of jobs in the national economy by showing *either* that the jobs in the claimant's region are a significant number or that jobs in several other regions of the country constitute a significant number). This argument is not persuasive. The Ninth Circuit Court of Appeals has never issued a published decision finding that only 266 jobs in a region was a significant number, and the other Ninth Circuit cases cited by *Beltran* holding that there were a significant number of jobs were instances involving over a thousand jobs regionally. *Id*. (citing *Barker v. Secretary of Health & Human Services,* 882 F.2d 1474, 1479 (9th Cir. 1989) (holding 1,266 jobs regionally is a significant number of jobs); *Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir. 1987) (3,750 to 4,250 jobs was a significant number of jobs). *See also Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in Oregon region and 622,000 in the national economy); *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995) (30,000 jobs in Los Angeles County area); *Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in San Diego County and 64,000 jobs nationwide).

ORDER - 13

is a significant number of national jobs, but it is a "close call.")). As a result, plaintiff asserts this matter should be remanded for further development and a hearing *de novo*. *Id.*

To support a finding of "not disabled" at step five, the ALJ must identify other work that exists in the national economy in significant numbers. *Beltran v. Astrue*, 700 F.3d 386, 388-89 (9th Cir. 2012). There is no bright-line rule for what constitutes a significant number of jobs. *Id.* at 389. However, if one occupation constitutes significant numbers, any error related to the other occupations is harmless. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (finding it unnecessary to address challenge to a representative occupation because the other representative occupation constituted a significant number of jobs).

The Commissioner has not identified any published case in the Ninth Circuit (and the Court is aware of none) holding that approximately 11,000 jobs nationally is a significant number. As plaintiff points out, the Ninth Circuit recently noted that although 25,000 jobs in the national economy was a significant number, this was a "close call" under Ninth Circuit precedent. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (citing *Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995) (64,000 nationwide jobs significant); *Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002) (622,000 nationwide jobs significant); *Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir. 2000) (125,000 nationwide jobs significant); *see also Beltran,* 700 F.3d at 390 (1,680 nationwide jobs insignificant)). The Court declines the Commissioner's invitation to rely entirely on out-of-circuit precedent to find 11,000 jobs nationally to be a significant number in this case.

Accordingly, this case must be remanded for the limited purpose of re-evaluating step five. It is not clear, based upon the vocational expert's testimony and the ALJ's written decision, whether there are other jobs in the local and national economy that plaintiff could perform with the RFC assessed by the ALJ in this case. However, it is clear that the ALJ erred

ORDER - 14

by relying on the jobs of semiconductor die loader and semiconductor wafer breaker due to the prohibition on exposure to hazards. In addition, the ALJ's reliance on the 266 jobs in Washington and 11,304 touch-up screener jobs in the national economy is insufficient to carry the ALJ's burden at step five. On remand, the ALJ shall solicit the testimony of a VE to determine the type of work, if any, that plaintiff is capable of performing.

## VIII. CONCLUSION

For the foregoing reasons, the Court ORDERS that this case be REVERSED and REMANDED to the Commissioner for further proceedings at step five of the sequential evaluation process.

DATED this 13th day of November, 2018.

JAMES P. DONOHUE
United States Magistrate Judge